IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIE LORRAINE BRADLEY, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:10-CV-681-Y |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Julie Lorraine Bradley, TDCJ-ID #01431536, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

In 2006 petitioner was charged with intoxication manslaughter in Johnson County, Texas. (State Habeas R. at 10[1]) On April 13, 2007, a jury found her guilty of the offense and assessed the maximum punishment. (*Id.* at 11) Petitioner appealed, but the Tenth Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused her petition for discretionary review. (Pet., Ex. C) *Bradley v. State*, No. 10-07-119-CR, slip op., 2008 WL 4512567 (Tex. App.–Waco Oct. 8, 2008) (not designated for publication); *Bradley v. Texas*, PDR No. 1512-08. (Pet.[2]) Petitioner did not seek writ of certiorari. (*Id.*)

Petitioner filed a state application for writ of habeas corpus, raising the ineffective assistance claims presented herein, which was denied without written order by the Texas Court of Criminal Appeals. (State Habeas R. at cover) This federal petition for writ of habeas corpus followed.

The Tenth Court of Appeals summarized the evidence as follows:

> On Sunday, July 24, 2005, Carmen Stanley headed north on I-35 in Johnson County in her 2003 Volkswagen Beatle. Meanwhile, Kenneth Bullard was traveling south on I-35 in Johnson County, headed for Austin. Glancing in his rear-view mirror, Bullard noticed a Ford Explorer approaching his vehicle at a high rate of speed which he estimated to be 90 miles per hour. Bradley was driving that Explorer. Fearing a collision, Bullard accelerated in an attempt to avoid being hit from behind. Bradley attempted to pass Bullard on the right and in doing so, clipped the back right of Bullard's vehicle. Bradley then swerved to the left and into the grassy median separating the northbound and southbound lanes of I-35.
>
> A truck driver, traveling north on I-35 and in the left lane beside Stanley, noticed the Explorer swerve into the median, hit a concrete drainage ditch and spiral airborne toward his truck. He applied his brakes and watched as the Explorer passed

---

[1]"State Habeas R." refers to the state court record in petitioner's state habeas application no. WR-74,221-01; "State Habeas Supp. R" refers to the supplemental/clerk record in the same proceeding.

[2]The petition is not paginated.

upside down in front of his windshield and hit his right "spot" mirror.  The Explorer then crashed into Stanley's Beetle, crushing the Beetle and Stanley.  Stanley died at the hospital from the massive injuries she sustained in the collision.

(Pet., Ex. C, at 1-2)

### D. ISSUES

Petitioner raises one ground for habeas relief, in which she contends her trial counsel rendered ineffective assistance of counsel.

### E. RULE 5 STATEMENT

Respondent does not contend that the petition is barred by the statute of limitations or successive or that petitioner's claims are unexhausted.  (Resp't Ans. at 4)

### F. DISCUSSION

### 1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court decision will be an unreasonable application of clearly established federal law if it

correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. *Ineffective Assistance of Counsel*

Petitioner claims her trial attorneys were ineffective by failing to (1) consult with an expert on accident reconstruction, (2) challenge the qualifications of the state's expert on accident reconstruction, (3) challenge the reliability of the opinions offered by the state's expert on accident reconstruction, (4) present testimony from an accident reconstruction expert on her behalf, (5) properly investigate the facts of her case, (6) present all available favorable witnesses and evidence at trial, (7) properly prepare Chris Bradley to testify, and (8) object to prejudicial victim-impact and victim-character testimony at the guilt/innocence phase, and by (9) becoming emotional and crying during trial. (Pet. Insert; Pet'r Mem. at 6-26)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's

4

performance fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense. *Id.* at 688. A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Petitioner raised his ineffective assistance claims in his state habeas application, and the state habeas judge, after conducting a hearing by affidavit, found that there were "no controverted, previously unresolved issues of fact material to the legality of" petitioner's confinement and the application was forwarded to the Texas Court of Criminal Appeals, which denied the application without written order. (State Habeas R. at cover) As previously noted, this constitutes an adjudication on the merits by the highest state court and is entitled to the presumption of correctness. Under these circumstances, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314

(1963)[3]; *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell*, 315 F.3d 491,

493 n.3 (5th Cir. 2002).  Thus, assuming the state courts applied the familiar *Strickland* attorney-

performance standard to petitioner's ineffective assistance claims and made factual findings

consistent with the denial of the claims, we defer to the state court's determination unless it appears

the decision was contrary to or involved an unreasonable application of *Strickland* or resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence in the

state court proceedings.

Having independently reviewed petitioner' ineffective-assistance claims, in conjunction with

the state court records, this court cannot say that the state courts' denial of habeas relief was contrary

to or involved an unreasonable application of the *Strickland* standard or that it was based on an

unreasonable determination of the facts as presented in the state court proceedings.  Weighing the

credibility of the affiants was the role of the state habeas court,[4] and, clearly, the state court found

the affidavits of counsel and those provided by counsel to be more credible.  *Pippin v. Dretke*, 434

F.3d 782, 792 (5th Cir. 2005) (providing that a trial court's credibility determinations made on the

basis of conflicting evidence are entitled to a strong presumption of correctness and are "virtually

unreviewable" by the federal courts).  Petitioner presents no compelling argument or evidence to

rebut the state courts' rejection of her claims, and there is nothing in the record to suggest that, but

---

[3]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d).  *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

[4]This is true even though only a paper hearing, rather than a live hearing, was conducted, there were contradictory affidavits, and the state habeas judge did not preside over petitioner's trial. *See Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001); *Carter v. Johnson*, 131 F.3d 452, 460 n.13 (5th Cir. 1997); *Hudson v. Quarterman*, 273 Fed. Appx. 331, 334 (5th Cir. 2008).

for counsel's alleged acts or omissions, the jury would have acquitted petitioner or imposed a lesser sentence.

Petitioner claims trial counsel was ineffective by failing to consult with an expert on accident reconstruction, challenge the qualifications of the state's expert, challenge the reliability of the opinions offered by the state's expert, present testimony from an expert on her behalf, and investigate and present additional testimony and documentary evidence that the damage to the driver's side of her vehicle occurred before the July 24 accident and was reported to her insurance company, thereby undermining the state expert's opinion that the damage occurred during, and started the chain reaction leading to, the July 24 fatal accident.  (Pet'r Mem. at 6-15)  In support of these claims, petitioner presented her own expert analysis of the July 24 collision and the affidavits of Chris and Mark Bradley, Margaret Thames, Darla Bollin, and Terry Cusack, family members and friends, averring that the damage to the driver's side of petitioner's Explorer pre-existed the July 24 accident. (State Habeas Supp. R. at 39-74, 77-94; Pet'r Mem., Exs. I-P)

In her affidavit, lead defense counsel, Shelly D. Fowler, who is board certified in the area of criminal law, responded to these allegations as follows:

> The State called Sergeant Sean Bolton, police officer with the City of Burleson, as a witness.  During the questioning, Sergeant Bolton testified as to the following qualifications to substantiate his position as an expert in accident reconstruction:
>
> *     Certified peace officer for 18 years
> *     Completion of a 400 hour basic academy course
> *     Employment with military police and the U.S. Border Patrol
> *     Employment with Brownwood Police Department and 12 years with Burleson Police Department
> *     Rank of Sergeant
> *     Patrol Supervisor for evening shift
> *     Completion of basic accident investigation course

* Completion of a 40 hour course in intermediate accident investigation
* Completion of an 80 hour course in advanced accident investigation
* Completion of the highest level accident investigation course - accident reconstruction
* Certification by TCLEOSE (Texas Commission of Law Enforcement Education Standards) as an intermediate accident investigation expert
* Certification by TCLEOSE as an advanced accident investigation expert
* Investigated thousands of accidents

I felt it was the best trial strategy, with the lengthy list of Sergeant Bolton's qualifications, to question his theories and conclusions as opposed to his qualifications. Any questioning of Sergeant Bolton's qualifications in the areas of accident investigation and accident reconstruction would have served to only bolster his testimony and substantiate his theories - thus harming applicant's case.

. . .

My co-counsel, Brent Huffman, cross-examined Sergeant Bolton. During this cross-examination, he questioned the reliability of every opinion Sergeant Bolton testified to. He specifically questioned:

(1) the fact that Bolton never physically examined Bullard's car.
(2) the fact that the dent on the silver Explorer could have existed prior to this accident.
(3) the absence of a paint transfer from the Explorer and the maroon car.
(4) the reason for impairment - i.e., answering a cell phone.
(5) different possible scenarios for the accident.
(6) factors contributing to the accident.

Trial strategy was that it was better to question Sergeant Bolton's opinions during testimony in front of the jury in an effort to negate his findings.

. . .

At the beginning of my representation of Applicant, I hired an investigator to investigate the facts of the case and interview witnesses. His report is attached as Exhibit "D". I also hired an independent lab to retest the blood to determine the existence of controlled substances in Applicant's blood (Exhibit "B"). Further, I

8

asked Applicant on more than one occasion to submit to me names of all witnesses on her behalf which she sent me fifteen names on two separate occasions (Exhibits "I" and "J").  Nowhere on this list, nor in the numerous emails received from her parents were the names Mark Bradley, Margaret Thames, Darla Bollin, or Terry Cusack.

Based on the information received from Applicant and her family and the experts hired, I did a thorough job in investigating the facts and calling witnesses on Applicant's behalf.

. . .

I presented all relevant evidence favorable to Applicant.  The only thing additional which could have been done was for Applicant to have followed my advice, plead guilty, and show some remorse for her actions.  She chose not to do so and showed absolutely <u>NO</u> remorse for the death of the victim.

(State Habeas R. at 119-22, 124) (citations to record omitted)

Trial counsel has a duty to conduct a reasonable amount of pretrial investigation into the facts and pertinent law of a criminal case or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691.  The dispositive factor regarding counsel's decision whether to hire an expert must be evaluated on the basis of reasonableness. *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007).  In the present case, counsel's decision not to hire a defense expert in accident reconstruction and instead conduct a vigorous cross-examination of the state's expert was not unreasonable. *Id.* at 470-473; *Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992).  A reading of the trial record reveals that discrediting the state expert's testimony regarding the accident scene was a defensive strategy, which counsel pursued effectively.  Thus, counsel's failure to investigate and employ a defense expert had little injurious effect, if any, on the jury's verdict. Furthermore, Texas courts have allowed police officers with similar qualifications to testify as an expert in traffic collision cases. *See, i.e., Wooten v. State*, 267 S.W.3d 289, 303-04 (Tex.

App.–Houston [14th Dist.] 2008); *Ter-Vartanyan v. R & R Freight, Inc.*, 111 S.W.3d 779, 781 (Tex. App.–Dallas 2003). Had counsel objected to the qualifications of Officer Bolton, the objection likely would have been overruled. Counsel is not ineffective for failing to make meritless objections. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (failure to make a meritless objection cannot be grounds for ineffective assistance of counsel). Nor is counsel ineffective by failing to call witnesses who were unknown to counsel or present evidence unknown and unaccessible to counsel.

Petitioner claims counsel was ineffective by not properly preparing Chris Bradley, her ex-husband, to testify so that he could have provided documentation of the insurance claim for the damage to the driver's side of petitioner's vehicle, in order to corroborate his testimony that the damage occurred before the July 24 accident. (Pet'r Mem. at 15 & Ex. K) Counsel responded to this allegation as follows:

> Chris Bradley was called to testify in the guilt-innocence phase of the trial. My co-counsel, Brent Huffman, spoke with Mr. Bradley prior to his testimony and prepared him. I had also spoken with Applicant's family via email about the content of the testimony (Exhibit "K").
>
> During his testimony, Mr. Bradley explained the scratches/creases to the jury and had very little cross-examination.
>
> It concerns me that in Mr. Bradley's affidavit (attached to Applicant's Memorandum as Exhibit K), Mr. Bradley states, "she did not ask me many questions." It is clear from the transcript (as I am sure Mr. Udashen read thoroughly) that Mr. Brent Huffman conducted all questioning of Mr. Bradley and there was no "she" involved.

(State Habeas R. at 123) (citations to the record omitted)

Co-counsel, Brent Huffman, also responded to this allegation in an affidavit as follows:

> One of the allegations in Ms. Bradley's Application alleges that her trial attorneys failed to prepare Chris Bradley for his testimony. This allegation is untrue. I called Chris Bradley prior to his testimony and told him that I would be calling him

to testify. I also told Mr. Bradley what questions I would be asking of him. Mr. Bradley informed me that he was 100% sure that the damage was present before this accident occurred on July 24, 2005, occurring in May or June 2004. Mr. Bradley also informed me that this damage was consistent with the height of a guardrail and ran the entire length of the vehicle. Mr. Bradley emphasized that he was a professional surveyor and that observation was his thing. I have no recollection of Mr. Bradley telling me that the prior damage to the Ford Explorer had been filed with his insurance company. Mr. Bradley's testimony was very brief and the only issue was whether or not the damage to the Ford Explorer existed prior to the accident that occurred on July 24, 2005.

(*Id.* at 164-65)

As previously noted, weighing the credibility of the affiants was the role of the state habeas court. *Pippin*, 434 F.3d at 792. There is nothing in the record to suggest that petitioner or her ex-husband informed counsel that an insurance claim had in fact been filed. (Pet'r Mem., Ex. Q, Ex. K of counsel's affidavit) Furthermore, even if petitioner could show counsel was aware of the insurance filing and was deficient by not preparing Bradley more thoroughly, petitioner cannot demonstrate that the defense was prejudiced as a result. Even assuming the damage to petitioner's Ford Explorer did pre-date the July 24 accident, the witness testimony at trial alone was sufficient that the jury could have reasonably determined the accident was caused by petitioner who was speeding and collided with Bullard's car, igniting the unfortunate series of events that followed, while operating the vehicle under the influence of a controlled substance.

Petitioner claims counsel was ineffective by failing to object to victim-impact and victim-character testimony by the deceased's husband during the guilt/innocence phase. (Pet'r Mem. at 15-17) Counsel responded to this allegation as follows:

Mathis v. State, 67 S.W.3d 918 (Tex. Crim. App. 2002), defines victim-impact testimony as testimony which describes the effect the victim's death will have on others, particularly the victim's family members.

11

The testimony given by Dickey Bob Stanley amounted to mere background information on the victim especially regarding the day the accident occurred. It did not rise to the level of victim-impact in that it did not show the effect her death had on other family members. Therefore, no objections were necessary.

The testimony was very limited in scope and duration and any objection would have unnecessarily drawn the jury's attention to the subject matter. If the State's questioning had continued for an extended period of time, I would have objected to it; however, trial strategy was to remain silent so as not to let the jury concluded that it was important.

(State Habeas R. at 125)

The record supports counsel's assertions. Counsel is not required to make frivolous objections. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Moreover, counsel's strategic decision not to object was within counsel's range of discretion. Such decisions are virtually unchallengeable on federal habeas review. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009); *Strickland*, 466 U.S. at 689.

Petitioner claims counsel was ineffective by becoming emotionally distraught and crying during trial. (Pet'r Mem. at 18)  This claim is also supported by the affidavits of Chris and Mark Bradley, Margaret Thames, and Terri Cusack.  Counsel responded as follows:

The allegations contained in the Affidavits about my behavior are absolutely false and untrue. As confirmed by the Affidavit of court clerk, Catherine Lasater (Exhibit "L") and the Affidavit of the 413th Bailiff, Phil Martin (Exhibit "M"), there was never an emotional outburst in Applicant's trial. I was never emotionally distraught nor did I break down or cry uncontrollably. I certainly never ran out of the courtroom at any time. Judge Bosworth would have made a comment, or called a recess, at the very least, if any of these things had really occurred.

The disturbing thing about the complaints in these Affidavits about my "alleged" show of emotion was the fact that Applicant showed NONE. Throughout her testimony and the trial, Applicant showed no remorse for this offense. When I spoke with the jury after the trial, they were all very upset by that fact.

(Pet'r Mem., Exs. L, M, N & P; State Habeas R. at 126-65, 159-62; State Habeas Supp. R. at 78-83,

12

89-94)

In summary, petitioner has failed to present convincing evidence or compelling argument to rebut the presumption of correctness of the state courts' adjudication of her ineffective assistance claims. Thus, applying the presumption of correctness, the state courts' denial of habeas relief is not contrary to, or involve an unreasonable application, of *Strickland*.

### 3. *Evidentiary Hearing*

Petitioner's claims were adjudicated on the merits in state court, and she has failed to overcome the limitation of § 2254(d)(1), on the record that was before the state court, to warrant a hearing in this court. *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398-1401 (2011).

## II. RECOMMENDATION

Petitioner has not demonstrated that she is entitled to federal habeas relief; thus, it is recommended that the petition be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until December 28, 2011. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until December 28, 2011, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December _____7_____, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

14